**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0221n.06
Filed: April 24, 2008

No. 07-1444

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **LEAH MILLS,** | ) | |
| | ) | |
| *Plaintiff-Appellant,* | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| **PATRICIA WILLIAMS; CHERYL** | ) | |
| **AUBUCHON; COURTNEY MCANUFF;** | ) | |
| **AND SUSAN PATALIN,** | ) | **OPINION** |
| | ) | |
| *Defendants-Appellees.* | ) | |
| | ) | |
| | ) | |
| | ) | |

**BEFORE: RYAN, SILER, and COLE, Circuit Judges.**

**PER CURIAM.** Plaintiff-Appellant, Leah Mills, a former customer service representative at the Eastern Michigan University ("EMU") Academic Advising Center ("AAC"), appeals the district court's grant of summary judgment to Defendants-Appellees, Patricia Williams, Director of the AAC; Cheryl Aubuchon, a Supervisor at EMU's Livonia campus; Courtney McAnuff, EMU's Vice-President for Enrollment Services; and Susan Patalin, EMU's Director of Employment Recruiting and Human Resources, on her claim of retaliation under the First Amendment. Specifically, Mills argues that Defendants-Appellees retaliated against her for engaging in various protest and speech activities through pretextual elimination of her position at EMU's Ypsilanti campus, forced transfer to a less convenient and less prestigious position at EMU's satellite campus

in Livonia, subsequent ostracism at and isolation from the Ypsilanti campus, blacklisting from jobs across campus, and disparaging remarks about her to parents of students at EMU with whom she worked closely.

The district court granted summary judgment to defendants-appellees, concluding that, although Mills engaged in protected activity under the First Amendment, she neither suffered an adverse action nor proffered sufficient evidence of a causal connection between her protected conduct and any alleged adverse employment action. On appeal, Mills urges this Court to reverse the district court's grant of summary judgment to Defendants-Appellees because (1) it discounted this Court's precedent in *Leary v. Daeschner*, 349 F.3d 888 (6th Cir. 2003), which, in her estimation, clearly establishes that she suffered an adverse employment action, and (2) there is sufficient evidence to demonstrate a causal connection between her protected speech activities and the alleged adverse action she suffered.

We review a district court's grant of a motion for summary judgment under a de novo standard. *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006). A moving party is entitled to a grant of its motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Ultimately, the proper inquiry is whether the state of the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 252; *Stromback v. New Line Cinema*, 384 F.3d 283, 292 (6th Cir. 2004). Additionally, "the mere existence of a scintilla of evidence in support

of Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." *Anderson*, 477 U.S. at 252; *Compuware Corp. v. Moody's Investors Services, Inc.*, 499 F.3d 520, 525 (6th Cir. 2007).

A cause of action for First Amendment retaliation entails three components. The employee must establish that: "(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by his protected conduct." *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006).

Applying this standard, the district court proceeded by finding that Mills had engaged in constitutionally protected activity. Turning to the adverse-action prong, the court divided the harms Mills allegedly suffered into three categories: "(1) the elimination of Plaintiff's job and corresponding transfer to Livonia, (2) the alleged 'blacklisting' of Plaintiff from positions on the Ypsilanti campus, and (3) constructive discharge of Plaintiff from employment with EMU." (JA 38-39.) Addressing the first allegedly adverse action, namely the termination of Mills's position at the AAC and subsequent transfer to the Livonia campus, the district court focused on "the objective nature of the inquiry" and held that "a reasonable person would not find a transfer to a job with the same pay and benefits only an extra 20 miles away sufficient to deter their exercise of their First Amendment rights." (JA 40.) Although recognizing that the need for a parent to tend to children is a factor that may be accounted for in the adverse-action inquiry, the court ultimately found that Mills's failure to provide objective evidence of the heightened prestige associated with the AAC

position, along with the fact that her inability to attend Ypsilanti City Council meetings due to the schedule at the Livonia position was not a cognizable injury, trumped the former. (JA 39-40.)

Turning to the second allegedly adverse action, the supposed blacklisting of Mills from positions on the Ypsilanti campus, the court noted that "the entirety of Plaintiff's evidence that she was blacklisted rests upon the testimony of [Tyrone] Wilson that Defendant Williams told them she knew how to blacklist someone from campus jobs . . . and that Plaintiff did not obtain any jobs on the Ypsilanti campus when she applied for several." (JA 40.) Since Mills had not proffered any evidence suggesting that any of the defendants had actually contacted officials on the Ypsilanti campus to preclude their hiring of her, the court found this claim to be factually unavailing. (JA 41.)

With respect to the third allegedly adverse action, Mills's constructive discharge, the court found that Mills's failure to quit her job ultimately precluded such a claim. (JA 41.) Because Mills sought to preserve her job at the AAC by extending her leave time, she never actually quit, which is a requisite element for a constructive discharge.

On the element of causation, the court explained that a logical prerequisite to causation is a showing that defendants, in fact, were aware of Mills's political engagements. (JA 42.) Based on the record, however, the court was only able to discern evidence that defendants knew of the Mills's participation in a Town and Gown event commemorating Martin Luther King Day, but not any of her other political activities, such as her attendance at and participation in Ypsilanti City Council meetings. (*Id*.) Due to the two-year gap between the Martin Luther King Day incident and Mills's subsequent termination, the court found this time period "too attenuated" to support a finding of

causation. (*Id*.) Accordingly, the court granted summary judgment to defendants on the issue of causation as well.

Because the persuasive reasoning that supports the judgment in favor of the Defendants-Appellees has been clearly articulated by the district court in its comprehensive Opinion and Order, our issuance of a detailed written opinion would be unduly duplicative. Accordingly, we affirm the judgment rendered by the Honorable John Feikens on February 26, 2007 on the basis of the reasoning contained in that document.

RYAN, Circuit Judge, concurring.          I concur in the decision to affirm the district court's judgment because I'm satisfied that the plaintiff suffered no adverse employment action of the kind that could trigger a justiciable First Amendment retaliation claim against the defendants. See Scarbrough v. Morgan County Bd. of Educ., 470 F.3d 250 (6th Cir. 2006).