RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0083p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

SAMUEL JOSEPH WURZELBACHER,
                    *Plaintiff-Appellant,*


            *v.*                                           No. 10-4009


HELEN E. JONES-KELLEY; FRED WILLIAMS;
DOUG THOMPSON,
                    *Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 09-00162—Algenon L. Marbley, District Judge.

Argued: March 7, 2012

Decided and Filed: March 27, 2012

Before: GIBBONS, GRIFFIN, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:** James F. Peterson, JUDICIAL WATCH, INC., Washington, D.C., for
Appellant. Anne Berry Strait, OFFICE OF THE OHIO ATTORNEY GENERAL,
Columbus, Ohio, for Appellees. **ON BRIEF:** James F. Peterson, Paul J. Orfanedes,
JUDICIAL WATCH, INC., Washington, D.C., David R. Langdon, Joshua B. Bolinger,
Cincinnati, Ohio, for Appellant. Anne Berry Strait, Rebecca L. Thomas, Peggy W.
Corn, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for
Appellees.

_____

## OPINION
_____

GRIFFIN, Circuit Judge. Plaintiff Samuel Joseph Wurzelbacher appeals the
dismissal of his 42 U.S.C. § 1983 civil rights action alleging First Amendment retaliation
and violation of his informational right to privacy. We affirm.

1

I.

The undisputed facts, as summarized by the district court, are as follows:

[Wurzelbacher] is an individual and resident of the State of Ohio. He was trained as a plumber by the United States Air Force, and, until recently, was employed by a small plumbing business near Toledo, Ohio. Defendant Helen Jones-Kelley was the Director of the Ohio Department of Job and Family Services ("ODJFS"). Defendant Fred Williams was the Assistant Director of ODJFS. Defendant Doug Thompson was the Deputy Director of Child Support within ODJFS.

On October 12, 2008, President Barack Obama, then Senator and presidential candidate, appeared on [Wurzelbacher]'s street while campaigning. [Wurzelbacher] joined the crowd and asked several questions of President Obama related to the impact that the President's tax plan would have on [Wurzelbacher]'s ability to purchase a small business. The questions posed by [Wurzelbacher] were recorded by the media, and replayed later on stations across the country. After his exchange with President Obama, [Wurzelbacher] received and accepted numerous requests from the media to speak about his views of the President, and, in those appearances, criticized President Obama's policies. During the third presidential debate, Senator John McCain referred to [Wurzelbacher]'s questions, and referred to [Wurzelbacher] as "Joe the Plumber." After the debate, [Wurzelbacher] continued to appear in the national media.

At all times relevant to [Wurzelbacher]'s claims, [d]efendants were the three highest-ranking officials at ODJFS. The ODJFS administers state programs including child support enforcement, the Temporary Aid to Needy Families ("TANF") cash assistance program, and unemployment compensation. As part of these programs, ODJFS maintains confidential databases including: the Support Enforcement Tracking System ("SETS") for child support enforcement; the Client Registry Information System Enhanced ("CRIS-E") for records under the TANF program; and the Ohio Job Insurance ("OJI") database, which contains unemployment benefit records. The Ohio Revised Code sections 5101.26 through 5101.30, and the Ohio Administrative Code Chapter 5101, section 1-1-03, govern the confidentiality and disclosure rules of these databases. [Wurzelbacher] alleges that ODJFS personnel are only permitted to access the databases to carry out official agency business, and that prior to being permitted to access the databases, ODJFS employees are trained in areas related to confidentiality, safeguarding guidelines, and security procedures.

[Wurzelbacher] alleges that on October 16, 2008, four days after [his] interaction with President Obama, [d]efendants had a meeting at which they discussed "Joe the Plumber."  Defendant Jones-Kelley then authorized searches related to [Wurzelbacher] on the SETS, CRIS-E, and OJI databases.  After the meeting, [d]efendant Thompson directed an agency employee to conduct an inquiry regarding [Wurzelbacher] in the SETS database, and [d]efendant Williams directed an agency employee to conduct a search related to [Wurzelbacher] in the CRIS-E database. The agency employee who searched the CRIS-E database then contacted another employee to search the OJI database.  The [c]omplaint alleges that all three searches took place on October 16, 2008, that these searches were not related to any official agency business, and that [d]efendants authorized and directed the searches for the purpose of retrieving information on [Wurzelbacher] because of [his] interaction with President Obama and his subsequent media appearances.

Defendants were supporters of President Obama's campaign, and [d]efendant Jones-Kelley donated to the President's campaign, was a fundraiser, and volunteered to arrange a campaign event for First Lady Michelle Obama.

[Wurzelbacher] alleges that after the [d]efendants authorized and conducted searches in the databases, the Office of the Ohio Inspector General ("OIG") conducted an investigation and found "no legitimate agency function or purpose for checking on [Wurzelbacher's] name through SETS, CRIS-E, and OJI or for authorizing those searches." (Compl. at 30.)  The OIG allegedly specifically found that: [d]efendant Jones-Kelley's authorization was not appropriate and that she committed a wrongful act by authorizing the searches; [d]efendant Thompson instructed an agency employee to send an email to another agency official telling that official that the search was for an agency purpose; and that the email was an attempt to deceive as there was no agency purpose. Separately from the inquiry as to the search of [Wurzelbacher]'s name, the OIG allegedly found that [d]efendant Jones-Kelley used state resources to engage in political activity for President Obama's campaign, and that those political activities were an inappropriate use of state resources.  After the OIG report was issue[d], Ohio Governor Ted Strickland suspended [d]efendants from their positions.  Allegedly, [d]efendant Jones-Kelley resigned her position prior to the end of her suspension, [d]efendant Williams resigned effective January 31, 2009, and [d]efendant Thompson was terminated from his position prior to the end of his suspension.

*Wurzelbacher v. Jones-Kelley*, 728 F. Supp. 2d 928, 930-31 (S.D. Ohio 2010).

Wurzelbacher filed his complaint on March 5, 2009, alleging First Amendment retaliation and violation of his privacy rights. Thereafter, defendants moved for judgment on the pleadings, which was granted on August 4, 2010. This timely appeal followed.

## II.

We review a district court's grant of judgment on the pleadings under Federal Rule of Civil Procedure 12(c) using the same de novo standard of review applicable to orders of dismissal under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (internal quotation marks and citation omitted).

Under 42 U.S.C. § 1983, an individual may bring a private cause of action against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). In this case, Wurzelbacher alleges violations of his First and Fourteenth Amendment rights. We address each claim below.

## III.

Wurzelbacher asserts that defendants conducted improper database searches in retaliation for his protected speech of asking a question of a presidential candidate. In order to adequately plead a First Amendment retaliation claim, a plaintiff must allege:

> (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).  In this case, the district court held that Wurzelbacher failed to allege a sufficient "adverse action" to survive defendants' motion for judgment on the pleadings.  We agree.

"The term 'adverse action' arose in the employment context and has traditionally referred to actions such as 'discharge, demotions, refusal to [hire], nonrenewal of contracts, and failure to promote.'"  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010) (quoting *Thaddeus-X*, 175 F.3d at 396).  In the First Amendment context, however, we have held that "any action that would deter a person of ordinary firmness from exercising protected conduct will [constitute a sufficient adverse action], which may include harassment or publicizing facts damaging to a person's reputation." *Id.*  Whether an alleged adverse action is sufficient to deter a person of ordinary firmness is generally a question of fact.  *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). Nevertheless, when a plaintiff's alleged adverse action is "inconsequential," resulting in nothing more than a "de minimis injury," the claim is properly dismissed as a matter of law.  *Id.* at 603, 606.  Indeed, it "trivialize[s] the First Amendment to allow plaintiffs to bring . . . claims for *any* adverse action[,] no matter how minor."  *Id.* at 603 (internal quotation marks and citation omitted) (emphasis in original).

In this case, we hold that the adverse action pleaded by Wurzelbacher is insufficient to create a cause of action.  He asserts that defendants, without his knowledge, performed several improper database searches under his name.  However, the complaint contains no information regarding what, if any, information was discovered.  Moreover, if any information was obtained, it was never publicly disclosed. *See Brown v. Crowley*, 312 F.3d 782, 801 (6th Cir. 2002) ("Where, as here, a challenged action has no consequences whatsoever, either immediate or long-term, it ineluctably follows that such an action is 'inconsequential.'").  Wurzelbacher did not suffer a threat to his economic livelihood, *Fritz*, 592 F.3d at 728; was not defamed, *id.* at 726; did not endure a search or seizure of property, *Bell*, 308 F.3d at 604-05; and did not experience the public disclosure of intimate or embarrassing information, *Bloch v. Ribar*, 156 F.3d

673, 681 (6th Cir. 1998). In addition, Wurzelbacher was not threatened with a continuing governmental investigation, and he does not allege that defendants' actions in fact caused a "chill" of his First Amendment rights. Rather, he alleges that the challenged database searches were all conducted and completed on or about October 16, 2008. *See Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) ("The mere presence of an intelligence data-gathering activity does not give rise to constitutional liability.") (internal quotation marks and citation omitted).

Wurzelbacher does allege that his knowledge of the improper database searches caused him to suffer "emotional distress, harassment, personal humiliation, and embarrassment." However, these allegations are too generalized to withstand judgment on the pleadings. *See Mezibov*, 411 F.3d at 722 (dismissing a First Amendment retaliation claim when allegations of "emotional anguish and distress" were insufficient to establish the requisite level of "specific or concret[e] personal injury") (internal quotation marks and citation omitted); *Mattox v. City of Forest Park*, 183 F.3d 515, 523 (6th Cir. 1999) ("[Plaintiff] offers only generalized statements about the effect on her character and reputation[.] . . . Nowhere does she attempt to concretize her personal injury.").

Moreover, while we have held that embarrassment and humiliation may be sufficient to establish a First Amendment retaliation claim, this holding was made in the context of the public disclosure of intimate information regarding a rape. *Bloch*, 156 F.3d at 676. Indeed, not all allegations of emotional injury are sufficient to establish First Amendment retaliation. In *Mattox*, the plaintiff alleged First Amendment retaliation when a published report disclosed private information regarding a "traumatic childhood incident." 183 F.3d at 522. In addressing this claim, we held that the disclosure was insufficiently adverse to establish First Amendment retaliation, despite the fact that the plaintiff alleged "ridicule, contempt, shame, and disgrace." *Id.* at 523. While not minimizing "any embarrassment [the plaintiff] may have suffered," we held that the disclosure of the childhood incident did not rise to the same "level" as the disclosure in *Bloch*, which involved "humiliating details" regarding a rape. *Id.*

In the present case, the allegations are even less severe than those in *Mattox* because information, if any, discovered by defendants was never disclosed. Indeed, Wurzelbacher's alleged emotional injuries stem from the mere fact that fruitless database searches were conducted. Accordingly, we hold this alleged adverse action to be "inconsequential" as a matter of law. *See McComas v. Bd. of Educ., Rock Hill Local Sch. Dist.*, 422 F. App'x 462, 469 (6th Cir. 2011) (holding that a public statement was "not sufficiently embarrassing to constitute an adverse action"); *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503-04 (6th Cir. 2011) (noting that a single search of a prisoner's cell is not sufficiently severe to constitute an adverse action); *Mills v. Williams*, 276 F. App'x 417, 418-19 (6th Cir. 2008) (holding that a job transfer was not sufficiently severe to constitute an adverse action); *Poppy v. City of Willoughby Hills*, 96 F. App'x 292, 295 (6th Cir. 2004) ("Poppy fails to explain how conduct such as . . . reviewing her time sheets, requesting keys to her office to inspect records kept there, or installing a security camera in the hall outside her office adversely affected her employment and thereby deterred her from exercising her rights under the First Amendment."); *Mezibov*, 411 F.3d at 722 ("[A]ny harm to Mezibov . . . is too minimal to be constitutionally cognizable.").

Under the circumstances alleged in the present case, we conclude that "a person of ordinary firmness" would not be deterred or chilled. Our conclusion is supported by the fact that Wurzelbacher was not deterred or chilled in the exercise of his First Amendment rights as a result of defendants' wrongful conduct. Accordingly, for the reasons detailed above, the district court correctly dismissed this claim for failure to allege a sufficient adverse action.

IV.

Wurzelbacher next asserts the violation of his Fourteenth Amendment privacy rights. Upon review, we hold that this claim was also properly dismissed.

As we have previously explained:

Two types of interests have been identified by the Supreme Court as protected by the right to privacy that is rooted in the substantive due process protections of the Fourteenth Amendment. One is the interest in

> "independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599-600 & n.26, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977) (noting that these decisions have been characterized as dealing with "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education" (quoting *Paul v. Davis*, 424 U.S. 693, 713, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976))). The other type of privacy interest applicable to individuals is the "interest in avoiding disclosure of personal matters." *Id.* at 599, 603-04, 97 S. Ct. 869 (recognizing that a statute requiring that the state be provided with a copy of certain drug prescriptions implicated the individual's interest in non-disclosure, but upholding the law because the statute contained adequate security measures); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 465, 97 S. Ct. 2777, 53 L. Ed. 2d 867 (1977) (assuming that President Nixon had a legitimate expectation of privacy in his private communications, but upholding a federal law that provided for the review and classification of presidential materials by professional archivists).

*Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008). The latter interest, commonly referred to as the "informational right to privacy," *Bloch*, 156 F.3d at 683, is implicated in this case.

In contrast to our sister circuits, we have limited the right of informational privacy "only to interests that implicate a fundamental liberty interest." *Lambert*, 517 F.3d at 440 (internal quotation marks and citation omitted). Accordingly, a plaintiff alleging the violation of his informational privacy rights must demonstrate that "the interest at stake relates to those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty." *Bloch*, 156 F.3d at 684 (internal quotation marks and citation omitted); *see also Lee v. City of Columbus, Ohio*, 636 F.3d 245, 260 (6th Cir. 2011); *J.P. v. DeSanti*, 653 F.2d 1080, 1087-91 (6th Cir. 1981). Given this demanding standard, we have recognized a constitutionally-protected informational-privacy interest in only two circumstances: (1) where the release of personal information may lead to bodily harm, and (2) where the released information relates to matters "of a sexual, personal, and humiliating nature." *Lambert*, 517 F.3d at 440.

Our precedent forecloses Wurzelbacher's privacy claim. Wurzelbacher does not allege that the improper database searches endangered a fundamental liberty interest. Certainly, he does not allege that he was subjected to a risk of bodily injury or that

intimate information was disclosed to the public.  Thus, because Wurzelbacher has not identified an interest at stake that is "fundamental or implicit in the concept of ordered liberty," his claim fails.  *Bloch*, 156 F.3d at 684 (internal quotation marks and citation omitted).  The Supreme Court has listed "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education" as fundamental.  *Paul v. Davis*, 424 U.S. 693, 713 (1976).  None of these interests are implicated in this case.

## V.

For these reasons, we affirm the judgment of the district court.