NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0293n.06

No. 13-3898

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 21, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CHARLES D. HUNT; MERYLIN M. CONARD, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CITY OF CLEVELAND; JOHN M. KIGGINS; | ) | COURT FOR THE |
| CITY OF EAST CLEVELAND; TODD | ) | NORTHERN DISTRICT OF |
| CARROSCIA; RALPH SPOTS; CHRISTOPHER | ) | OHIO |
| CARGILE; JOHN 1-20 DOES, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: BOGGS and KETHLEDGE, Circuit Judges; RESTANI, Judge.[*]

RESTANI, Judge. Plaintiff-Appellant Charles Hunt appeals the district court's grant of summary judgment to defendants-appellees on his claims brought under 42 U.S.C. § 1983 (2012) in this action stemming from a car accident involving Hunt, and its aftermath.[1] We affirm.

I.

Hunt was injured severely when a police cruiser driven by defendant-appellee East Cleveland Police Officer Todd Carroscia struck Hunt's car in the early hours of October 5, 2008, in an intersection in Cleveland. The video camera in Carroscia's cruiser and the camera in

---

[*] The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

[1] A passenger in Hunt's vehicle, Marylin Conard, also was injured. Conard filed suit and her name is on the Notice of Appeal and the brief. The brief, however, does not address the district court's dismissal of Conard's federal claims on the basis that the alleged constitutional violations did not injure Conard. Any appeal by Conard on the federal claims thus is deemed waived. See United States v. Sandridge, 385 F.3d 1032, 1035–36 (6th Cir. 2004).

another cruiser following Carroscia failed to capture the accident. Hunt claims that this video evidence was destroyed.

Defendant-appellee John Kiggins, a Cleveland police officer, was assigned to investigate the accident. Kiggins returned the East Cleveland police cruiser to the City of East Cleveland, and Hunt's car was taken to Cleveland's impound lot. The police cruiser eventually was repaired, and Hunt's car was destroyed.

During the course of his investigation into the crash, Kiggins received the results of Hunt's blood tests taken at the hospital following the accident. The blood tests showed that Hunt had a blood alcohol level over the legal limit and had marijuana and cocaine in his system. Kiggins met with a county prosecutor on October 29, 2008 to review possible charges. On December 15, 2008, a county prosecutor informed Kiggins that Hunt should be charged only "if the hospital is certified to take the blood or whatever samples they took from him." Kiggins learned that the hospital was not certified and completed a supplementary report indicating that "this case is hereby considered closed."

On March 10, 2009, Hunt filed a lawsuit against Carroscia and the City of East Cleveland for Carroscia's negligent/reckless driving and spoliation of certain evidence from the police cruiser. On April 21, 2009, the City of East Cleveland filed its answer, a counterclaim, and a cross-claim against Carroscia.

On June 10, 2009, Kiggins presented the file pertaining to the car accident to a City of Cleveland prosecutor to authorize tickets against Hunt for Operating a Vehicle under the Influence ("OVI"). Following authorization from the city prosecutor, Kiggins swore out an OVI complaint against Hunt on June 24, 2009. Kiggins apparently did not receive any new evidence between December 2008, when he marked the file closed, and June 2009, when he presented the

case to the city prosecutor.  The charges were dismissed on April 22, 2010 by the city prosecutor's office.

After voluntarily dismissing his original complaint on May 19, 2010, Hunt refiled his claims in the Cuyahoga County Court of Common Pleas on May 18, 2011.  In addition to the original claims, Hunt added as defendants Kiggins, the City of Cleveland, East Cleveland Police Chief Ralph Spots, and East Cleveland Police Sergeant Christopher Cargile.  The refiled complaint set out the following claims: Count I—Retaliation, First Amendment per 42 U.S.C. § 1983; Count II—Malicious Prosecution, Fourth Amendment per 42 U.S.C. § 1983; Count III—Abuse of Process; Count IV—Governmental Liability per 42 U.S.C. § 1983; Count V—Reckless, Wanton or Willful Operation of Motor Vehicle, Negligence per se, per Ohio law; Count VI—a Monell[2] Claim under 42 U.S.C. § 1983; Count VII—Conspiracy to Deprive Civil Rights, 42 U.S.C. § 1985; and Count VIII—Spoliation.  A notice of removal to federal court was filed on August 3, 2011.

On June 28, 2013, the district court granted summary judgment to all defendants on Hunt's federal claims.  The district court then remanded the state-law claims to state court.  Hunt appeals the grant of summary judgment on his First Amendment retaliation, Fourth Amendment malicious-prosecution, and Monell/municipal-liability claims.

## II.

We review de novo a district court's grant of summary judgment.  Frazier v. Honda of Am. Mfg., Inc., 431 F.3d 563, 565 (6th Cir. 2005).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "a

---

[2] See Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658 (1978).

reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In reviewing the grant of summary judgment, we draw all reasonable inferences from the evidence in favor of the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III.

Hunt argues that genuine issues of material fact exist on his First Amendment retaliation, Fourth Amendment malicious-prosecution, and Monell claims.  Hunt also raises issues regarding the district court's statute-of-limitation analysis.

### A.

First, Hunt challenges the district court's statute-of-limitations analysis.  The relevant statute of limitations is two years from the date that Hunt knew or should have known of his injury.  Browning v. Pendleton, 869 F.2d 989, 992 (6th Cir. 1989); Friedman v. Estate of Presser, 929 F.2d 1151, 1159 (6th Cir. 1991).  The district court held that Hunt's constitutional claims could not be based upon the car accident itself or the spoliation of evidence regarding the crash because these events fell outside of the statute of limitations.  The claims based upon the prosecution against Hunt were addressed by the district court on the merits.

To the extent that Hunt bases any of his constitutional claims on the car accident, the district court was correct in holding that such claims are barred by the statute of limitations, because the harm was known to Hunt on the date of the accident, October 5, 2008, yet he did not file his constitutional claims until May 18, 2011, more than two years later.  Similarly, Hunt was given notice in October 2008 that his car was impounded and would be disposed of if he did not pick it up by October 23, 2008, and the complaint from his original suit in March 2009 shows that he was aware at that time that the evidence from the police cruiser had been lost.

The timing with regard to the alleged destruction of various files is unclear, but the district court held in the alternative that the destruction of this evidence did not amount to a constitutional violation. As explained below, this alternative holding was correct because Hunt has not shown that the Ohio state courts are unable to address adequately the loss of this evidence.

B.

Hunt argues that there are genuine issues of material fact regarding whether charges were brought against him in retaliation for filing suit against Carroscia and the City of East Cleveland after the car accident. To prove a First Amendment retaliation claim, a plaintiff must show that: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012) (internal quotation marks omitted). In addition, the plaintiff in a retaliatory-prosecution action must plead and show the absence of probable cause for pressing the underlying criminal charges. See Hartman v. Moore, 547 U.S. 250, 255–56 (2006); Barnes v. Wright, 449 F.3d 709, 720 (6th Cir. 2006). We agree with the district court that Hunt has failed to raise a triable issue of fact regarding whether the filing of charges against Hunt was motivated by the lawsuit against Carroscia and East Cleveland.

The action forming the basis of Hunt's claim is the criminal complaint sworn out against him by Kiggins in June 2009. Hunt argues that the actions of Kiggins, a Cleveland police officer, were motivated by Hunt's lawsuit against East Cleveland and Carroscia, who was an East Cleveland police officer. Although Hunt has put forward testimony that the East Cleveland

Police Department previously had a practice of bringing charges against persons who were wronged by the police in order to deter or retaliate against the filing of a lawsuit, there is no evidence that this policy spilled over to the City of Cleveland. The scant evidence cited by Hunt showing communication between the East Cleveland Police Department and Kiggins relates to Kiggins's attempt to obtain additional evidence regarding the crash and occurred in October 2008, several months before Hunt filed suit against East Cleveland and Carroscia. Nothing in these communications suggest any sort of improper conduct or motivation by any of the defendants.

To show that Kiggins was attempting to protect the East Cleveland defendants, Hunt also points to the destruction of Hunt's car and the return of the police cruiser to East Cleveland, Kiggins's alleged lack of evidence to pursue charges against Hunt, and the fact that the case was reopened and charges were brought against Hunt after Hunt filed his original lawsuit.

Although Kiggins failed to take any affirmative action to preserve Hunt's car, the car was destroyed pursuant to the impound lot's procedures without any direction from Kiggins, and Hunt was sent notice that his car would be disposed of if he did not pick it up. Regarding the police cruiser, Hunt claims that the electronic data recorder, which would contain information such as the cruiser's speed at the time of the accident, was destroyed or lost after the cruiser was returned to East Cleveland. The evidence in the record, however, indicates that the cruiser never had an electronic data recorder to begin with. Moreover, the cruiser sat in the East Cleveland lot for at least several months before it was repaired. This evidence simply does not permit a reasonable inference that there was some sort of conspiracy between Kiggins and the East Cleveland defendants to destroy evidence with the purpose of deterring Hunt from pursuing future litigation.

Regarding Kiggins's reliance on the toxicology tests, the only record evidence of Kiggins's awareness of a policy against using those tests is the email from the county prosecutor. The record does not show if the city prosecutor had the same policy at the time the charges were brought or if Kiggins was aware of the city's policy, if one existed.[3] Furthermore, there are no allegations that Kiggins, in an attempt to circumvent that policy, misrepresented the evidence to the city prosecutor who approved the charges. In sum, the evidence does not disclose any nefarious conduct by Kiggins in relying on the toxicology tests when presenting Hunt's case to the city prosecutor.

The remainder of Hunt's argument is based upon the timeline of the case. Kiggins closed the case in December 2008, after presenting it to the county prosecutor, because the hospital lab was not certified; Hunt filed suit in March 2009; and the city prosecutor approved charges against Hunt in June 2009. Hunt cites Muhammad v. Close for the proposition that "temporal proximity alone may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive." 379 F.3d 413, 417–18 (6th Cir. 2004) (internal quotation marks omitted). In Holzemer v. City of Memphis, however, we elaborated that this inference might be warranted only if the temporal proximity is "extremely close" and that "often evidence in addition to temporal proximity is required." 621 F.3d 512, 526 (6th Cir. 2010) (internal quotation marks omitted). Three months elapsed after Hunt filed his lawsuit against Carroscia and East Cleveland before charges were filed against Hunt, which hardly seems "extremely close" in time, and neither Kiggins nor the City of Cleveland was a party to

---

[3] Hunt cites Officer Cerny's testimony for the proposition that Cleveland police "weren't allowed" to bring charges using only those toxicology results. Cerny, however, never testified that such a policy existed on a department-wide basis during the relevant timeframe. Cerny testified that he was aware at the time of his deposition that there were admissibility problems with those tests, but he stated that in 2008 the police likely still were unsure whether this evidence could be used and that they had been able to use those tests as evidence in the past.

the original lawsuit. The time gap and the fact that neither Kiggins nor the City of Cleveland had any discernible interest in the suit against Carroscia and East Cleveland precludes any inference based on temporal proximity alone that the charges were motivated by Hunt's lawsuit.

Because Hunt is unable to point to any evidence from which a reasonable juror could conclude that the charges were motivated by Hunt's lawsuit against East Cleveland and Officer Carroscia, the district court's grant of summary judgment to the defendants on Hunt's First Amendment retaliation claim was proper.

C.

Hunt also appeals the grant of summary judgment on his Fourth Amendment malicious-prosecution claim. To succeed on this claim, Hunt must prove four elements.

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

Sykes v. Anderson, 625 F.3d 294, 308–09 (6th Cir. 2010) (citations omitted) (internal quotation marks and brackets omitted). Despite being labeled as an action for "malicious prosecution," a plaintiff does not have to demonstrate malice. Id. at 309–10. Hunt claims in his brief that "Defendants Spotts [sic], Cargile, and Kiggins, influenced and participated in the decision to prosecute Plaintiff Hunt." Appellant Br. 28.

Summary judgment for the defendants was proper on this claim because Hunt has failed to produce any evidence showing that Spots, Cargile, or Kiggins influenced or participated in the actual decision to prosecute Hunt. Hunt cites no evidence whatsoever showing that Spots or

Cargile contacted Kiggins. Nor does Hunt point to any evidence showing that they directed anyone else to contact and influence Kiggins. Summary judgment for Spots and Cargile therefore was proper. And although Kiggins played an active role in bringing charges against Hunt, "an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's truthful materials." Sykes, 625 F.3d at 314. The city prosecutor had the ultimate authority in charging Hunt, and there is nothing to indicate that Kiggins presented false information or withheld any information when presenting the case to the city prosecutor.

D.

The final issues on appeal are Hunt's claims against the municipalities.

As to his claim against Cleveland, Hunt tersely argues in his brief that Cleveland failed to provide adequate training to Kiggins on the proper preservation of evidence. To establish a failure-to-train claim, Hunt must show "prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013) (internal quotation marks and brackets omitted). Hunt fails to cite any evidence showing that Cleveland was aware of a pattern of unconstitutional conduct and a need for further training. Judgment for Cleveland therefore was warranted.

Hunt focuses most of his argument regarding East Cleveland's potential liability on the East Cleveland Police Department's alleged policy of retaliation. Summary judgment was proper on this claim because Hunt cannot point to any evidence showing that East Cleveland's alleged policy caused Kiggins and the City of Cleveland to pursue charges against Hunt.

Hunt also argues that East Cleveland failed to train Carroscia on how to drive the police cruiser and makes several allegations that East Cleveland destroyed evidence as part of an alleged cover-up for Carroscia. As indicated, any claim arising out the car accident itself is barred by the statute of limitations, as is any claim arising out of the destruction of evidence from the police cruiser. To the extent that Hunt's municipal-liability claim is based on the loss of various files, the alleged destruction of this evidence does not establish a constitutional violation. Any claim based upon a cover-up to limit civil liability is best understood as a "denial of access" claim, which requires Hunt to show: "(1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) substantial prejudice to the underlying claim that cannot be remedied by the state court; and (4) a request for relief which [Hunt] would have sought on the underlying claim and is now otherwise unattainable." Flagg v. City of Detroit, 715 F.3d 165, 174 (6th Cir. 2013) (citations omitted) (internal quotation marks and brackets omitted). Because Hunt has not shown that the alleged destruction of evidence cannot be addressed adequately by the Ohio state courts in the context of his litigation against Carroscia and the City of East Cleveland, he has failed to show a denial of access. See Swekel v. City of River Rouge, 119 F.3d 1259, 1263–64 (6th Cir. 1997) (noting the general adequacy of state-court remedies and spoliation lawsuits in redressing police cover-ups); Joyce v. Mavromatis, 783 F.2d 56, 57 (6th Cir. 1986) (rejecting denial-of-access claim based upon police cover-up when there was "no reason to believe that an Ohio court and jury would be unavailable and would not do justice between the parties").

IV.

For the forgoing reasons, the district court's grant of summary judgment to all defendants on Hunt's federal claims is affirmed.