NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0160n.06

No. 25-1698

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 08, 2026
KELLY L. STEPHENS, Clerk

BRIAN MENGE,

     Plaintiff-Appellee,

v.

KHURSHEED ASH-SHAFII,

     Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: GILMAN, KETHLEDGE, and HERMANDORFER, Circuit Judges.

HERMANDORFER, Circuit Judge. Highland Park City Councilman Khursheed Ash-Shafii asserted during a City Council meeting that Brian Menge, a former detective, had previously stolen from the City's forfeiture fund. According to Menge, that statement was false. So Menge sued Ash-Shafii under 42 U.S.C. § 1983 and Michigan law, asserting First Amendment retaliation and other claims. At the summary-judgment phase, the district court denied Ash-Shafii qualified immunity from the First Amendment retaliation claim. Because Ash-Shafii did not violate Menge's clearly established First Amendment rights, we reverse.

I

Brian Menge joined the City of Highland Park Police Department in 2014 as a patrol officer. A few years into Menge's tenure, one of Menge's coworkers sued the City after the City terminated the coworker. In February 2019, Menge—by that time a detective—gave deposition

testimony in his coworker's lawsuit that displeased Highland Park's then-Mayor. The Mayor responded by ordering Menge's demotion from detective to patrol officer.

Menge sued the City in January 2021, claiming that the City had demoted him in violation of various federal and state statutes. While that lawsuit proceeded, Menge formed an independent private-investigation company. He then resigned from the Highland Park Police Department.

In October 2022, Menge agreed to release his claims against the City in exchange for $560,000. And by early 2023, Menge was putting "110 percent" into his private-investigation business. Menge Dep., R.103-6, PageID 2460. Menge, however, desired to return to the Highland Park Police Department. To that end, in March 2023 Menge spoke at a Highland Park Police and Fire Commission meeting and fielded questions from attendees. But Menge never formally applied for a job with the Police Department.

Khursheed Ash-Shafii, a Highland Park City Councilman, opposed Menge's attempt to rejoin the Police Department. After the above-described Commission meeting ended, Ash-Shafii posted a video recording of the meeting on his Facebook page and wrote: "This is shameful Officer minge was fired and sue the city he received half million dollar 500,000 settlement no way in hell they should bring this officer back!!!!!" Facebook Post, R.112-7, PageID 3830.

On April 3, 2023, the Highland Park City Council—Highland Park's legislative body—held a regular meeting that citizens could attend in person or virtually; a video of the meeting was later uploaded to Facebook. Items on the meeting agenda included reading an ordinance to amend the Highland Park Administrative Code, addressing various "Community Development" resolutions, "Citizen[] Participation," and "Council Affairs." Meeting Agenda, R.103-13, PageID 2737-38.

During the council-affairs portion of the meeting, Ash-Shafii expressed his view that Menge "should not be brought back as a police officer in the City of Highland Park." Council Meeting, R.50-4, 0:28-0:33. Ash-Shafii noted that Menge had previously "sued the City" and received a "half-a-million-dollar settlement." *Id.* at 0:11-0:16. Ash-Shafii then asserted that Menge "was caught stealing from" the Highland Park "forfeiture fund." *Id.* at 0:24-0:28. For present purposes, we accept that the forfeiture-fund accusation was false. When confronted about his statement, Ash-Shafii responded that "the former administration" had provided him evidence and that he would email it to the City Council. *Id.* at 1:20-1:39. But Ash-Shafii never produced any evidence that supported his assertion that Menge had misappropriated municipal funds.

Ash-Shafii's false statement brought Menge's private-investigation caseload "down considerably," and Menge "lost clients because of the comments." Menge Dep., R.103-6, PageID 2447. One local defense attorney testified that he declined to send two matters to Menge after hearing about Ash-Shafii's comments and told other attorneys to "hold off on using" Menge's services. Whittie Dep., R.103-21, PageID 2928.

In June 2023, Menge sued Ash-Shafii, the other City Councilmembers, the former Mayor, and the City, seeking damages under § 1983 and state law. The district court granted motions to dismiss and for judgment on the pleadings as to all defendants—except Ash-Shafii, who did not join those motions. That left Menge's First Amendment retaliation, due process, and state-law defamation claims against Ash-Shafii.

Following discovery, Ash-Shafii moved for summary judgment. The district court determined that Michigan's law of legislative immunity and legislative privilege shielded Ash-Shafii from state-law liability. So it granted summary judgment to Ash-Shafii on Menge's state-

law defamation claim.  And Menge, the district court concluded, had abandoned his due-process claim.

As to First Amendment retaliation, the district court recognized that Ash-Shafii "d[id] not argue that the federal version of the legislative immunity doctrine bars" that claim.  D. Ct. Op., R.120, PageID 3896.  And the district court rejected Ash-Shafii's qualified-immunity defense.  Menge's evidence, the district court determined, could allow a jury to find that Ash-Shafii's false statement at the City Council meeting constituted adverse action in response to Menge's protected conduct of suing the City in 2021.  The district court further reasoned that "Menge's rights under the first amendment in the context of this case were clearly established at the time [of] Ash-Shafii's challenged conduct."  *Id.*

Ash-Shafii appealed.

II

Ash-Shafii contends that the district court erred in denying him summary judgment on Menge's § 1983 First Amendment retaliation claim.  That claim stemmed from the false forfeiture-fund statement Ash-Shafii made during the April 2023 City Council meeting.  Although the parties also mention Ash-Shafii's March 2023 Facebook post in passing, Menge's summary-judgment response never presented that post as an independent basis for First Amendment liability.  Nor has Menge disputed that the district court's summary-judgment order addressed "all of Menge's claims."  *Id.* at PageID 3883.  Menge thus "abandoned" any separate Facebook-based First Amendment retaliation claim.  *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023).  So, like the parties, we focus our remaining analysis on Ash-Shafii's false forfeiture-fund statement.

As to that statement, Ash-Shafii argues that both federal common-law legislative immunity and qualified immunity bar Menge's retaliation claim. We need not resolve the legislative-immunity issue because we agree that Ash-Shafii is entitled to qualified immunity.

We review the district court's qualified-immunity denial de novo. *DeVooght v. City of Warren*, 157 F.4th 893, 898 (6th Cir. 2025). "Qualified immunity shields government officials from suit unless those officials (1) violated a constitutional right that (2) was clearly established when the conduct occurred." *Johnson v. Russell*, 155 F.4th 759, 765 (6th Cir. 2025). Ash-Shafii confines his appeal to the second prong—whether he violated clearly established law. We have jurisdiction over that "purely legal question." *DeVooght*, 157 F.4th at 898.

A First Amendment retaliation claim requires a plaintiff to show that (1) he "engaged in constitutionally protected speech," (2) he "suffered an adverse action likely to chill a person of ordinary firmness from continuing to engage in protected speech," and (3) "the protected speech was a substantial or motivating factor for the adverse action." *Id.* (citation omitted). Ash-Shafii contests only that his false statement, made during the course of the City Council meeting, constituted adverse action under clearly established law. We agree.

To be "'clearly established,'" a legal principle must "clearly prohibit" an official's "conduct in the particular circumstances before him." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). "A right is not clearly established if existing precedent does not place the constitutional question beyond debate." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (per curiam) (citation omitted). Here, the particular circumstances involved a councilman who—during an official city council meeting—falsely accused a former detective of stealing municipal funds and asserted that the local police department should not rehire that officer. Existing precedent did not "suggest[]," let alone make clear to "every reasonable" councilman, that making false or defamatory statements

in that legislative context constitutes adverse action under the First Amendment. *Wesby*, 583 U.S. at 63.

Indeed, the caselaw most relevant to a local legislator like Ash-Shafii would have suggested just the opposite. A "reasonable" councilman who "consulted precedent" on the intersection of speech and legislative activity "would have encountered" legislative-immunity decisions, "most of which favored" the legislator. *Stockdale v. Helper*, 979 F.3d 498, 506-07 (6th Cir. 2020). Local legislators, after all, are "absolutely immune from suit under § 1983 for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). The "Supreme Court now generally equates the scope" of that "statutory immunity under § 1983 with federal legislators' constitutional immunity under the Speech or Debate Clause and uses the relevant case law interchangeably." *Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359, 364 (6th Cir. 2022) (cleaned up). Courts and commentators, moreover, have long understood the Speech or Debate Clause and its state analogues to permit legislators on the floor of a legislative session to "slander and even destroy others with impunity." *United States v. Brewster*, 408 U.S. 501, 516 (1972); *see also Coffin v. Coffin*, 4 Mass. 1, 28 (1808) ("[A] private citizen may have his character basely defamed, without any pecuniary recompense or satisfaction."); *cf.* 2 Joseph Story, Commentaries on the Constitution of the United States § 863, p. 329 (1833) (noting that a member of Congress may "defame others . . . in the actual discharge of his duties in congress"). That framework leaves punishment for reckless or defamatory statements to the political process, not the courts. *Cf. United States v. Johnson*, 383 U.S. 169, 180 (1966).

Longstanding precedent would thus indicate to a reasonable councilman that he may speak about former public officials during an official council meeting—even in a false or defamatory manner—without fear of § 1983-based liability. That "sends a first signal that liability is far from

clearly established" and at a minimum "strongly suggests that qualified immunity applies." *Stockdale*, 979 F.3d at 507 (emphasis omitted).

Menge, for his part, identifies no binding decision of this Court involving a local legislator making a false statement during a legislative session. Much less has he cited any precedent where a local legislator faced liability for such a statement. Nor did the district court point to any such case in denying Ash-Shafii qualified immunity. That the decisions on which Menge relies lack "sufficiently analogous" circumstances—those involving speech by legislators in the legislative context—alone gives us reason to reverse the denial of qualified immunity. *Finley v. Huss*, 102 F.4th 789, 808 (6th Cir. 2024); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (reiterating that the clearly established "inquiry must be undertaken in light of the specific context of the case" (citation omitted)).

Even putting aside the distinct legislative context, though, Menge's cases still fall short of overcoming qualified immunity. That is because no cited case clearly establishes that Ash-Shafii's false statement would "deter a person of ordinary firmness from exercising protected conduct." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citation omitted).

Consider first *Fritz v. Charter Township of Comstock*, on which Menge principally relies. 592 F.3d 718 (6th Cir. 2010). *Fritz* permitted a retaliation claim to proceed against a township supervisor who pressured a private employer to terminate its relationship with the plaintiff because of the plaintiff's protected conduct. *Id.* at 725. The public official exerted significant pressure on the employer over the course of three phone calls. *Id.* at 721. And we emphasized that the official's conduct was "designed to threaten" the plaintiff's "economic livelihood." *Id.* at 728. Here, by contrast, Ash-Shafii accused Menge of theft just once, not multiple times. More importantly, Ash-Shafii's comments lacked any "encouragement of termination"—indeed, Menge

was self-employed and never applied to rejoin the Highland Park Police Department. *Hilton v. Mish*, 720 F. App'x 260, 265 (6th Cir. 2018) (discussing *Fritz*). Menge's First Amendment claim instead seeks to target the defamatory statement itself. But speech alone did not form the basis for the adverse-action ruling in *Fritz*; it was the employer-directed threats that sufficed to allow the plaintiff's claim to proceed. 592 F.3d at 728. So *Fritz* did not place "beyond debate" the adverse-action question at issue here. *Zorn*, 146 S. Ct. at 930 (citation omitted).

Nor does *Bloch v. Ribar* help Menge. 156 F.3d 673 (6th Cir. 1998). There, adverse action occurred when a sheriff held a press conference to release "confidential and highly personal details" of the plaintiff's rape. *Id.* at 676. A case about an official's public disclosure of factually true, "extremely humiliating" circumstances of a victim's rape says little about whether a false assertion involving no such "intimate details," *id.* at 676, 683, meets the "high" bar for defamation-based adverse action, *Cox v. Ruckel*, 2025 WL 2603787, at *13 (6th Cir. Sep. 9, 2025).

Also off point is *Barrett v. Harrington*, where a judge several times falsely accused the plaintiff of "stalking, harassing, and otherwise intimidating her." 130 F.3d 246, 262 (6th Cir. 1997). The judge talked to newspaper and television reporters, providing false statements that later appeared in print and on the evening news and resulted in "unfavorable media attention." *Id.* at 250. Here, Ash-Shafii made his lone false statement in the confines of a city council meeting; he did not amplify it multiple times through the media for broad dissemination. And Menge has not suggested that Ash-Shaffi's false statement otherwise generated any media attention.

At bottom, a reasonable councilman could not have "read the relevant precedent beforehand and known that it proscribed" Ash-Shafii's "specific conduct" at the April 2023 City Council meeting. *Zorn*, 146 S. Ct. at 930 (cleaned up). Ash-Shafii is thus entitled to qualified immunity from the First Amendment retaliation claim.

8

For the reasons given above, we reverse the district court's denial of summary judgment to Ash-Shafii.