RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0079p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

GLENN WHITING,

       *Plaintiff-Appellant*,

   No. 24-5918/5919

  *v.*

CITY OF ATHENS, TENNESSEE (24-5918/5919); MIKE KEITH AND BRANDON AINSWORTH (24-5918); STEVE SHERLIN (24-5919)

       *Defendants-Appellees*.

GLENN WHITING,

       *Plaintiff-Appellant*,

VAN IRION,

       *Appellant*,

   No. 25-5424

  *v.*

CITY OF ATHENS, TENNESSEE; SETH SUMNER; BO PERKINSON; BRANDON AINSWORTH; JAMESON SLIGER; TY GABLE; ROD WALKER; SETH WALKER; DEB CARDIN; TYLER HICKS; OFFICER TOM GARLAND,

       *Defendants-Appellees*.

─────────────────

Appeal from the United States District Court for the Eastern District of Tennessee at Knoxville.
Nos. 23-cv-0002; 23-cv-00220-221—Travis Randall McDonough, District Judge.

Decided and Filed:  March 13, 2026

Before:  STRANCH, BUSH, and MURPHY, Circuit Judges.

———————————

**COUNSEL**

———————————

**ON BRIEF: 24-5918/5919:** Van R. Irion, LAW OFFICE OFF VAN R. IRION, Knoxville, Tennessee, for Appellant. Daniel R. Pilkington, Brian R. Bibb, WATSON, ROACH, BATSON & LAUDERBACK, P.L.C., Knoxville, Tennessee, for Appellees. **25-5424:** Russ Egli, THE EGLI LAW FIRM, Knoxville, Tennessee, for Appellants. Daniel R. Pilkington, Brian R. Bibb, WATSON, ROACH, BATSON & LAUDERBACK, P.L.C., Knoxville, Tennessee, for Appellees City of Athens, Tennessee, Brandon Ainsworth, Deb Cardin, Ty Gable, Thomas Garland, Seth Walker, and Rod Walker. Philip Aaron Wells, ROBINSON, SMITH & WELLS, PLLC, Chattanooga, Tennessee, for Appellees Seth Sumner and Bo Perkinson.

———————————

**OPINION**

———————————

JOHN K. BUSH, Circuit Judge. In these consolidated appeals, Glenn Whiting and his attorney, Van Irion, appeal the denial of their motions to recuse and the grant of appellees' motions for sanctions. Seeing no abuse of discretion, we **AFFIRM**.[1]

**I.**

This appeal involves several lawsuits arising out of an annual fireworks show produced by the City of Athens, Tennessee. In 2022, during the COVID-19 pandemic, the City allowed only its employees and their families to attend. *See* Sumner and Perkinson Br. in No. 25-5424 at 7. Whiting thought the general public should not have been excluded, so he went in protest. R. 211, Mem. Op., PageID 2235 (No. 25-5424). When Whiting started filming children at the event, several City employees asked him to stop. *Id.* at PageID 2236. More confrontations ensued, and Whiting alleges that someone accused him of being a pedophile. *Id.* at PageID 2237. An officer then informed Whiting that causing a disturbance was illegal and that he would be removed if he continued. *Id.* at PageID 2237–38.

———————————

[1]Whiting's appellate briefing has significant irregularities and deficiencies, including citations to fake cases and misrepresentations of the record. We address those issues by separate opinion issued this date.

Hurt by how he was treated, Whiting brought defamation, First Amendment retaliation, and other tort claims against the City and others. *Id.* at PageID 2238. The district court granted summary judgment to defendants on all counts, and Whiting appealed. *Id.* at PageID 2235; R. 250, Notice of Appeal, PageID 2566 (No. 25-5424). We dismissed that appeal for failure to prosecute. *See* Order of 10/18/2024 in No. 24-5886. Back in the district court, defendants moved for sanctions and attorneys' fees, which the district court granted in part. R. 279, Order, PageID 2768 (No. 25-5424). Whiting and Irion appeal that order. R. 286, Notice of Appeal, PageID 2831 (No. 25-5424).

In 2023, the City announced it would cancel its annual fireworks show "because of a man's pending lawsuit against several city officials over what happened at last year's event." *Whiting v. City of Athens*, 23-6082, 2024 WL 3537651, at *1 (6th Cir. July 25, 2024) (*Whiting I*) (cleaned up). Again, Whiting sued the City and others for defamation and First Amendment retaliation. *Id.* at *1 & n.1. The district court dismissed for failure to state a claim and denied a motion to recuse; we affirmed across the board. *Id.* at *6. After we issued our mandate, the district court awarded sanctions and attorneys' fees to defendants. R. 57, Order, PageID 667 (No. 24-5918). Whiting appeals that order. R. 58, Notice of Appeal, PageID 680 (No. 24-5918).

Disappointed about the progress of settlement negotiations in these two lawsuits, Whiting went to the March 2023 City Council meeting to complain. R. 31, Mem. Op., PageID 370 (No. 24-5919). City officials then posted on Facebook saying that Whiting was to blame for the stalled settlement negotiations. *Id.* at PageID 371. This back and forth continued during the April 2023 City Council meeting. *Id.* Whiting followed up with yet another defamation and First Amendment retaliation lawsuit against the City and others. *Id.* at PageID 372.

Soon after the latter case was filed, Whiting unsuccessfully moved to recuse the district judge and magistrate judge assigned to hear the matter in that case and the related cases. R. 21, Order, PageID 139–40 (No. 24-5919). The district court then dismissed the action for failure to state a claim. R. 31, Mem. Op., PageID 370 (No. 24-5919). Finally, the district court granted sanctions and attorneys' fees to defendants. R. 44, Order, PageID 531 (No. 24-5919). Whiting appeals only the sanctions order. R. 45, Notice of Appeal, PageID 542 (No. 24-5919).

## II.

In No. 25-5424, Whiting challenges the district court's rulings related to the summary judgment motion and various discovery motions, but those were the subject of a previous appeal that we dismissed for failure to prosecute. *See* Order of 10/18/2024 in No. 24-5886. Dismissals for failure to prosecute carry preclusive effect, so we will not review those rulings. *See Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776–77 (6th Cir. 2009). The sanctions order in No. 25-5424, however, was not before us in the prior appeal, so we will review that order. Also, Whiting argues at least in part that the district court should not have sanctioned him because his claims were meritorious. Thus, although we will not review the summary judgment ruling, we will consider the merits of the claims to the extent they inform our sanctions analysis.

We handle the appeal in No. 24-5918 similarly. We affirmed the district court's dismissal of Whiting's complaint in an earlier appeal, *see Whiting I*, 2024 WL 3537651, at *6, and will not reconsider our decision, *see Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021). The sanctions order, on the other hand, was not before us in that appeal, *see Whiting I*, 2024 WL 3537651, at *6, and Whiting asserts that the district court should not have sanctioned him because his claims were not frivolous. Thus, although we will not again review the merits of the dismissal, we will consider whether Whiting's claims were frivolous because it informs our sanctions analysis.

Also, we cannot consider the substantive issues Whiting raises in No. 24-5919 because of a jurisdictional defect. Whiting does not list the dismissal order in his notice of appeal, R. 45, Notice of Appeal, PageID 542 (No. 24-5919), which deprives us of jurisdiction to review that order, *see Isert v. Ford Motor Co.*, 461 F.3d 756, 760 (6th Cir. 2006). Accordingly, we will not address the merits of the claims in No. 24-5919 beyond what is necessary to address the sanctions and recusal motions.[2]

Appellees assert that we must affirm the district court's sanctions orders because Whiting fails to challenge all independent bases for affirmance. *See* City's Br. in No. 24-5918 at 15–16;

---

[2]Arguably, the deficient notice of appeal also precludes review of the recusal motion, but we can consider sua sponte whether a district court should recuse. *See United States v. Schrank*, 975 F.3d 534, 537 (6th Cir. 2020) (ordering reassignment of the case on remand sua sponte).

*White Oak Prop. Dev., LLC v. Washington Township*, 606 F.3d 842, 854 (6th Cir. 2010).  But Whiting asserts that the claims he raised were not frivolous, and he says that the district court should not have awarded fees under state law for claims brought under federal law.  *See* Appellant's Br. in No. 24-5918 at 13, 26–27.  If we agree, then at least partial reversal would be appropriate.

Appellees further argue that Whiting waived any challenge to the sanctions orders because he failed to timely respond to the motions for attorneys' fees.  City's Br. in No. 24-5918 at 16–17.  But the district court reviewed the merits of those motions, R. 57, Order, PageID 669–71 & n.3 (No. 24-5918), and "there can be no forfeiture where the district court nevertheless addressed the merits of the issue," *United States v. Clariot*, 655 F.3d 550, 556 (6th Cir. 2011) (quoting *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707 (D.C. Cir. 2009)) (cleaned up).  So Whiting's arguments are preserved for appellate review.

**III.**

Recusal and sanctions orders are reviewed for an abuse of discretion.  *Ullmo ex rel. Ullmo v. Gilmour Acad.*, 273 F.3d 671, 681 (6th Cir. 2001); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510 (6th Cir. 2002).  A district court abuses its discretion when it "relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Cole v. City of Memphis*, 839 F.3d 530, 540 (6th Cir. 2016) (quoting *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013)).

When a district court finds a suit frivolous, we review that conclusion de novo to the extent that it is premised on the district court's understanding of the law because issuing sanctions on an erroneous view of the law is always an abuse of discretion.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990) (holding a court abuses its discretion when it incorrectly "determin[es] that a pleading was not 'warranted by existing law or a good faith argument' for changing the law"); *see also* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 17(G)(1)(a) (6th ed. Dec. 2025 Update) (adopting this interpretation of *Cooter & Gell*); *Brand v. Motley*, 526

F.3d 921, 923–24 (6th Cir. 2008) (explaining that frivolousness dismissals under 28 U.S.C. § 1915(e)(2) are reviewed de novo).

**A.**

Applying these standards, we start by reviewing the district court's orders denying the motions to recuse. In *Whiting I*, we affirmed the district court's recusal ruling in No. 24-5918. 2024 WL 3537651, at *2–3. The motions to recuse and the orders denying them in Nos. 24-5919 and 25-5424 are identical to those in *Whiting I*. *See generally* R. 91, Motion to Recuse, PageID 818–31 (No. 25-5424); R. 12, Motion to Recuse, PageID 59–72 (No. 24-5919); R. 15, Motion to Recuse, PageID 91–104 (No. 24-5918); R. 21, Order, PageID 168 (No. 24-5918). Because "like cases should generally be treated alike," we decline to revisit that ruling and affirm. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018).

**B.**

Now, the sanctions orders. The district court awarded attorneys' fees under 28 U.S.C. § 1927, 42 U.S.C. § 1988, and Tenn. Code. Ann. (T.C.A.) § 29-20-113. We address each statute in turn.[3]

Before getting into the specifics, however, we start with a general point. The district court issued these sanctions in the context of Whiting's and Irion's continued course of harassing litigation against the City of Athens and its employees, and that is a key factor in our analysis. *See Trump v. Clinton*, 653 F. Supp. 3d 1198, 1219–26 (S.D. Fla. 2023) (*Trump I*) (situating its sanctions order in a broader context of harassing litigation), *aff'd in relevant part*, 161 F.4th 671 (11th Cir. 2025). If any of the specific examples that we identify below had been isolated incidents, they may not have warranted sanctions. *See BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 757 (6th Cir. 2010) (explaining that inherent-power sanctions require bad faith conduct). But when considered collectively and in light of Whiting's and Irion's repeated vexatious conduct

---

[3]Whiting argues that appellees are defrauding the court and that the fees were block billed. *See* Appellant's Br. in No. 24-5919 at 16. The first argument was not made in the district court, and the second was not adequately briefed, so we reject them both. *See Jolivette v. Husted*, 694 F.3d 760, 770 (6th Cir. 2012); *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022).

towards the City of Athens,[4] we do not believe that issuing sanctions was an abuse of discretion. *See Trump v. Clinton*, 161 F.4th 671, 690 (11th Cir. 2025) (*Trump II*) ("a 'pattern of misusing the courts'" counsels in favor of sanctions).

**1.**

All told, the district court imposed sanctions under 28 U.S.C. § 1927 for one defamation claim (in No. 24-5919) and three First Amendment retaliation claims (in Nos. 25-5424, 24-5918, and 24-5919). R. 57, Order, PageID 673–75 (No. 24-5918); R. 44, Order, PageID 538–41 (No. 24-5919); R. 279, Order, PageID 2797 (No. 25-5424). Section 1927 sanctions can be appropriate when (1) "an attorney knows or reasonably should know that a claim pursued is frivolous," (2) "an attorney knows or reasonably should know" "that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims," *Bojicic v. DeWine*, 145 F.4th 668, 673 (6th Cir. 2025) (quoting *Hall v. Liberty Life Assur. Co. of Bos.*, 595 F.3d 270, 275–76 (6th Cir. 2010)), or (3) the attorney's conduct fell "short of the obligations owed by a member of the bar to the court," *King v. Whitmer*, 71 F.4th 511, 531 (6th Cir. 2023) (quoting *Salkil v. Mount Sterling Twp. Police Dep't*, 458 F.3d 520, 532 (6th Cir. 2006)). This is an objective standard. *See Larry E. Parrish P.C. v. Bennett*, 989 F.3d 452, 458 (6th Cir. 2021).

A litigant must do more than lose a case to be sanctioned under § 1927; his claims must also be frivolous. *Stalley ex rel. United States v. Mountain States Health All.*, 644 F.3d 349, 352 (6th Cir. 2011). We have generally found a claim frivolous in three circumstances: (1) when it was "'obviously without merit' under existing law and unsupported by a good-faith argument to change or extend the law," (2) when the party "entirely disregard[ed] . . . indisputably clear-cut and irrefutable authority" undermining his claims, *Bojicic*, 145 F.4th at 673 (cleaned up), or (3) when the party "kn[e]w that" the claim was meritless but brought it anyway, *Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008). Below, we address the frivolity of Whiting's defamation and First Amendment retaliation claims. We then address other, more global reasons for sanctioning Irion and the counterarguments he raises in support of reversal.

---

[4]The City represents that Whiting has sued it fourteen times in five years. City's Br. in No. 24-5918 at 13.

***Defamation.***   Case No. 24-5919 was the only case in which the district court's § 1927 fee award was based in part on a defamation claim. *See* R. 44, Order, PageID 538–41 (No. 24-5919). In that case, Whiting alleged that Mayor Steve Sherlin made several defamatory statements:

> On March 21, 2023 Mr. Whiting attended the regular monthly public meeting of the Athens City Council.  After being invited to the podium during the public speaking portion of the agenda, Whiting spoke to the Council about several topics. These topics included several actions that had been promised by three Council members prior to their recent election, including promises to settle all pending litigation by Whiting against the City.  According to Whiting, many of the promised actions had not been taken, and were being ignored.  Whiting's statements included an assertion that the City had already settled a lawsuit against it filed by recently-elected City Council Member and Vice Mayor Larry Eaton.  Whiting also asserted that the City had refused offers to settle made by Whiting.  After Whiting's statements Mayor Sherlin stated that, "There's more than one side to the story."
>
> *        *        *
>
> Many of Sherlin's statements of fact were false and defamatory toward Whiting. For example, Sherlin accused Whiting three times of "twisting the truth" regarding the history of settlement discussions.  He further said, "Both times we were advised that after repeated attempts to settle with Mr. Whiting he rejected terms and sought excessive amounts of money . . . Time and again we have tried to find a way to settle and yet Mr. Whiting persists by making new lawsuits against the City . . . We have tried he has denied and continues to twist the truth about whether or not we have made attempts to settle his lawsuits.  We can only do what legal Counsel advises us to do and nothing more . . . Mr. Whiting's change of position on settlement negotiations are baffling to say the least.  We have tried.  I and the entire council have been completely transparent.  We have made many positive changes that Mr. Whiting has pushed for, yet he is never satisfied, he now turns his displeasure on the new Council and on me, who all have tried to find resolution to these unending demands and lawsuits."  Upon information and belief Mayor Sherlin knew at the time he made said statements that they were false.

R. 1, Complaint, PageID 3–4 (No. 24-5919) (reproduced unmodified).

Whether these allegations amount to frivolous claims turns on the governing state law.  In Tennessee true statements, statements of opinion, and privileged statements are not defamatory. *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 50 (Tenn. Ct. App. 2013); *Stones River Motors, Inc. v. Mid-S. Pub. Co.*, 651 S.W.2d 713, 720 (Tenn. Ct. App. 1983); *Burns v. State*, 601 S.W.3d 601, 607 (Tenn. Ct. App. 2019).  Also, the litigation privilege covers all statements related to legal proceedings, whether inside or outside of court and whether the case is pending or impending.  *See*

*Unarco Material Handling, Inc. v. Liberato*, 317 S.W.3d 227, 238 (Tenn. Ct. App. 2010); *see also Simpson Strong-Tie Co. v. Stewart, Estes & Donnell*, 232 S.W.3d 18, 23–24 (Tenn. 2007).  And the legislative privilege immunizes all legislators from defamation actions for "statements made in the course of their legislative functions," whether they are made during a legislative session or not.  *Issa v. Benson*, 420 S.W.3d 23, 26–28 (Tenn. Ct. App. 2013).

Judged by this governing law, Whiting's defamation claim against Mayor Sherlin was frivolous and improperly litigated.  Recall that Whiting went to the City Council meeting to complain about the progress of settlement negotiations.  In response, Sherlin said "[t]here's more than one side to the story" and that Whiting "is never satisfied" with appellees' settlement offers. R. 1, Complaint, PageID 3–4 (No. 24-5919).  We agree that the claim based on Sherlin's statements was frivolous.  For one thing, the statements at issue are mostly statements of opinion, which are not actionable defamation.  *See Stone River Motors*, 651 S.W.2d at 720.  In addition, the litigation privilege and legislative privilege both bar the claim.  *See Simpson Strong-Tie*, 232 S.W.3d at 23–24; *Issa*, 420 S.W.3d at 26–29.

Three additional factors convince us that the district court did not abuse its discretion in concluding that Irion's conduct as Whiting's attorney in No. 24-5919 fell below what is expected of an officer of the court.

*First*, Irion failed to do even cursory amounts of research before filing the suit.  Brief research would have discovered *Issa*, where the Court of Appeals of Tennessee held that legislative and litigation privileges each barred a defamation case against a city councilman who, in response to the plaintiff's threat to sue the city council, accused the plaintiff of committing bribery.  420 S.W.3d at 26–29.  *Issa* strongly suggests that Tennessee courts would have rejected the defamation claim in No. 24-5919, meaning that the claim also would fail in our court.  *See Innovation Ventures, LLC v. Custom Nutrition Lab'ys, LLC*, 912 F.3d 316, 334 (6th Cir. 2018).

*Second*, Irion openly admitted that the claims were meritless.  *See* R. 19, Resp. in Opp. to MTD, PageID 123 (No. 24-5919) ("Therefore, all assertions of governmental immunity in the instant case should be granted and acknowledged . . . .").  It is one thing for an attorney to fail to do basic research.  It is quite another to do that research, see that the case is meritless, and then file

it anyway.  And to the extent that this was a concession that the case should have been dismissed upon reading the motion to dismiss, the appropriate course of action would have been to withdraw the suit, not continue to prosecute it.  We agree with the district court: "Plaintiff's counsel knew or should have known the claims against [appellees] were frivolous, and his decision to proceed is sanctionable."  R. 44, Order, PageID 539 (No. 24-5919).

*Third*, by the time No. 24-5919 was filed, it had become obvious that Whiting was conducting an ongoing campaign of lawfare against appellees.  It began in 2020, when Whiting sued over the condemnation of a building he did not own.  *See Whiting v. Trew*, 22-5448, 2023 WL 5352133, at *1 n.1 (6th Cir. Aug. 21, 2023).  Then, in No. 25-5424, Whiting sued *thirty-three defendants* and did not even bother to figure out which ones were at the 2022 fireworks show.  *See* R. 279, Order, PageID 2777 (No. 25-5424).  Then, in No. 24-5918, Whiting sued because appellees did not want him to sue again.  And finally, in No. 24-5919, he sued because appellees said something he did not like.  Whiting and Irion are not seeking to redress injuries.  They are trying to drain the City's resources and use the courts to harass appellees.  *See Trump I*, 653 F. Supp. 3d at 1207, 1210, 1213 (sanctioning plaintiff because the complaint was "[i]ntended for a political purpose," was part of a pattern of "using the courts to seek revenge on political adversaries," and evidenced "a deliberate attempt to harass" the defendants).

*First Amendment Retaliation.*  Whiting asserts that appellees retaliated against him for exercising his First Amendment rights by (1) confronting him at the 2022 fireworks show while he was recording children, (2) citing his litigation in an announcement purporting to cancel the 2023 fireworks show, and (3) blaming him for failed settlement negotiations.  Appellant's Br. in No. 24-5918 at 15–16; Appellant's Br. in No. 24-5919 at 11–12; Appellant's Br. in No. 25-5424 at 5–6.  Again, the district court correctly ruled that Whiting's claims were frivolous.

The government retaliates in violation of the First Amendment if "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)

(lead opinion of Moore, J.).  "This inquiry is intensely context-driven."  *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010).

The First Amendment protects the right to file lawsuits.  *Nicholson v. City of Westlake*, 76 F. App'x 626, 628 (6th Cir. 2003); *Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 768 (6th Cir. 2015).  That protection does not, however, extend to frivolous lawsuits.  *See United States v. Miller*, 531 F.3d 340, 351 (6th Cir. 2008); *see also Wolfe v. George*, 486 F.3d 1120, 1125 (9th Cir. 2007); *cf. Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (improperly filing prison grievances is not protected activity).  Nor can a litigant "immunize himself from adverse . . . action . . . merely by filing a . . . lawsuit and then claiming that everything that happens to him is retaliatory."  *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002)).

Importantly, the litigant must show that he has suffered an action "capable of deterring a person of ordinary firmness from exercising the constitutional right in question."  *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002)) (cleaned up).  "[N]ot all allegations of emotional injury are sufficient to establish First Amendment retaliation."  *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012).  "[S]ome adverse actions are so de minimis that they do not rise to the level of a constitutionally cognizable injury."  *Maben*, 887 F.3d at 266.

For example, publicly disagreeing with the plaintiff is not retaliation, nor is responding to the plaintiff's claims about the defendant.  *See Kubala v. Smith*, 984 F.3d 1132, 1140 (6th Cir. 2021); *Mezibov v. Allen*, 411 F.3d 712, 722 (6th Cir. 2005).  Additionally, some people "might have to endure more" serious adverse actions because of the positions they hold.  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010).  Finally, the fact that the plaintiff himself "was not deterred or chilled in the exercise of his First Amendment rights" counsels against holding that he suffered adverse action.  *Wurzelbacher*, 675 F.3d at 585.

A plaintiff must also provide "some evidence"—either direct or circumstantial—that the defendant subjectively had a "retaliatory motive."  *Hill*, 630 F.3d at 475; *Maben*, 887 F.3d at 262.  And the plaintiff loses unless the court determines that "the adverse action against the plaintiff

would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006)).

One more thing. Federal legislative immunity, which we have held is essentially the same as immunity under the Speech or Debate Clause, U.S. Const. art. I, § 6, cl. 1, is a defense to federal constitutional claims. *See Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359, 364 (6th Cir. 2022). "Regional legislators, local legislators, even non-legislative officials who act in a legislative capacity, enjoy immunity in § 1983 actions." *Id.* Federal legislative "immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). Importantly, the Supreme Court has upheld an assertion of legislative immunity when the plaintiff argued that the defendants were trying "to intimidate and silence [a] plaintiff and deter and prevent him from effectively exercising his constitutional rights of free speech and to petition the [government] for redress of grievances." *Tenney*, 341 U.S. at 371.

With these principles in mind, we agree with the district court that Whiting's First Amendment retaliation claims were frivolous.

Consider Whiting's retaliation claim in No. 25-5424. It is based on confrontations between City officials and Whiting when Whiting was accused of filming children at the 2022 fireworks show. *See* R. 211, Mem. Op., PageID 2241 (No. 25-5424). But Whiting failed to demonstrate that anyone took any adverse action against him. He alleged that parents present at the fireworks show "harassed" and "assaulted" him by requesting that he cease making his video. R. 1, Complaint, PageID 7–8 (No. 25-5424). This was not adverse action *by appellees*. Adverse action generally requires threats against the plaintiff by a defendant. *See, e.g.*, *Dean v. Byerley*, 354 F.3d 540, 551 (6th Cir. 2004) (finding evidence of adverse action where "[the plaintiff] Dean alleges that during the confrontation, [the defendant] Byerley threatened that Dean would never practice law in the state of Michigan due to his picketing and Byerley threatened that he would have the picketers arrested"). Some of the appellees here were not accused of making any threats—they simply asked Whiting to stop what he was doing—and what Whiting alleges transpired at the 2022 fireworks show falls far short of what constituted adverse action in other cases. *See, e.g.*, *id.* (threatening someone's livelihood); *Fritz*, 592 F.3d at 725–26 (similar). Whiting also presents no

evidence that his protected First Amendment activity was the motivating factor of the confrontations by appellees.  *See Nieves*, 587 U.S. at 398–99.  Rather, they were concerned that their children would be posted online without their consent.  *See* R. 211, Mem. Op., PageID 2248–49 (No. 25-5424).  The record does not support any other motivation.

In addition, Whiting openly admitted that he did not have any direct "evidence to show [that] anyone" gave or received instructions to harass him upon his arrival at the 2022 fireworks show.  R. 166, Whiting Dep., PageID 1824 (No. 25-5424).  A plaintiff's claim is frivolous when he knows that it is "entirely baseless," even if he does not make that discovery until after filing the lawsuit.  *King*, 71 F.4th at 521–22, 530.

Whiting relied on *res ipsa loquitur* to argue that someone must have instructed the park attendees to harass him, but that theory is plainly inapposite.  *Res ipsa loquitur* is a tort theory premised on the idea that some accidents do not happen unless someone was negligent.  *See, e.g.*, *Osunde v. Delta Med. Ctr.*, 505 S.W.3d 875, 886 (Tenn. Ct. App. 2016).  Whiting never explains how his allegations fit into this theory.  Nor does he explain how this theory fits with the rule that *respondeat superior* does not apply to federal constitutional claims.  *See, e.g.*, *Venema v. West*, 133 F.4th 625, 633 (6th Cir. 2025).  True, we generally do not sanction a lawyer for making a creative but ultimately unavailing argument.  *See, e.g.*, *Hogan v. Jacobson*, 823 F.3d 872, 887 (6th Cir. 2016).  But that requires the lawyer to at least try to make a plausible argument.  Irion did not.

Making matters worse, Whiting sued several defendants who had nothing to do with—and were never even at—the 2022 fireworks show.  Although "the City refused to tell" Whiting who was "involved in the" event before filing the lawsuit, Appellant's Br. in No. 25-5424 at 7 n.5, the solution was not to sue every City employee.  Instead, Whiting should have named a group of John Doe defendants and then used discovery to identify them.  *See, e.g.*, *McMann v. Doe*, 460 F. Supp. 2d 259 (D. Mass. 2006) (case where plaintiff sued a John Doe defendant for defamation and then sought to subpoena the defendant's identity from a third party); 2 Kurtis A. Kemper, *Computer and Information Law Digest* § 12:7.70 (2d ed. Oct. 2025 Update); 1 Gerald D. Peake, *Data Security & Privacy Law* § 8:3 (2024–25).

To be clear, misidentifying a defendant is not necessarily sanctionable. Had Whiting quickly amended his complaint upon learning that he made this mistake, our conclusion might be different. But he did not do that. Instead, he kept the misidentified defendants in the case long after it became clear that the claim against them was not viable. That was unreasonable, and the district court appropriately sanctioned Whiting for it.

Also, the recordings that Whiting took of the 2022 fireworks show directly contradict many allegations he made in the complaint. *See* R. 211, Mem. Op., PageID 2245–46 & nn.8–9 (No. 25-5424). Given that Whiting recorded and possessed this video, Whiting's lawyers had an obligation to review the video before filing the lawsuit. And given that Whiting brought this action anyway, either (1) he and his lawyers did not review the video or (2) they did review the video and brought the action despite knowing that the case was baseless. Either way, that is objectively unreasonable.

Whiting premises his First Amendment retaliation claim in No. 24-5918 on Keith's alleged statement to the local ABC affiliate that appellees cancelled the 2023 fireworks show because of Whiting's litigation. R. 34, Order, PageID 589. We agree that this claim was frivolous.

No reasonable person could view Keith's statements as the type of adverse action that could give rise to a retaliation claim. The local ABC affiliate asked why the City was cancelling its fireworks show, and Keith told them why. Answering a question to the media about why the government was taking certain action is not an attempt to chill speech, especially when the official does not make "unambiguous threats" to the plaintiff. *Kubala*, 984 F.3d at 1140–41.

Not only that, but Whiting's own theory of the case undermines his claim. He asserts that Keith's telling the media that appellees cancelled a fireworks show because of Whiting's lawsuit would scare a reasonable person out of suing appellees. But the fact remains that Whiting sued anyway. Indeed, Whiting has sued appellees over a dozen times despite what he describes as "the City's ongoing campaign of harassment against him." R. 34, Order, PageID 593 n.8 (No. 24-5918) (cleaned up); *see* City's Br. in No. 24-5918 at 13. Although we have held that a plaintiff need not actually have been deterred from engaging in the challenged conduct, *Hill*, 630 F.3d at 472, it still bears on the analysis, *Wurzelbacher*, 675 F.3d at 585. And this ongoing campaign of lawfare

demonstrates that Whiting is not facing the type of adverse action that would chill the exercise of his constitutional rights.

Moreover, Whiting's lawsuit against Keith and the City runs headlong into our precedent. In *Mezibov*, we held that a prosecutor did not engage in First Amendment retaliation when he called a criminal defense attorney a bad lawyer because a lawyer who "tak[es] on a high profile case" needs to "have a thicker skin than the ordinary citizen." 411 F.3d at 722 (cleaned up). Given that Whiting has a long history of filing lawsuits regrading matters of public concern against appellees, he is similar to the criminal defense lawyer in *Mezibov* and has "voluntarily placed [himself] open to criticism of [his] actions." *Id.* That means Whiting must be willing to take more heat than the average citizen.

In addition, Whiting brought a retaliation claim in No. 24-5918 against not just Keith and the City, but also Brandon Ainsworth, the City's fire chief, without any basis for doing so. Whiting alleges that the Fire Chief was not going to order firefighters to work at the Fourth of July event, R. 1, Complaint, PageID 4 (No. 24-5918), but he makes no effort to explain how Ainsworth's alleged decision not to provide emergency protection was retaliatory against Whiting.

Whiting's final First Amendment retaliation claim is in No. 24-5919, where he asserted that appellees retaliated against him by saying that he was not cooperating during settlement negotiations. R. 31, Mem. Op., PageID 371 (No. 24-5919). This is Whiting's most frivolous claim.

We agree with the district court that Mayor Sherlin's statements at the City Council meeting and online were not adverse enough to constitute First Amendment retaliation. As the district court thoughtfully explained, "[t]he statements at issue consist of direct responses to Whiting's statements of public interest at the council meetings. Nothing in the law requires a public official to sit silent in the face of such statements." *Id.* at PageID 379. The First Amendment is a shield, protecting the public against government officials that want to stifle speech they do not like. Whiting, by contrast, wants to use it as a sword and stifle speech *he* does not like. But just as the First Amendment gives Whiting the right to speak out against his elected representatives, it

also gives the officials of the City of Athens the right to speak out against him. *See Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478–79 (2022).

Again, Whiting was not deterred from continuing his constant barrage of litigation, and we conclude, as we did with No. 24-5918, that Whiting put himself in the limelight by filing lawsuits related to matters of public concern. By doing that, the First Amendment required him to withstand more scrutiny than the average private citizen.

Not to mention, Whiting's suit against Sherlin was barred by legislative immunity. The Mayor was plainly acting in his capacity as a legislator, which precludes a § 1983 action. More importantly for the sanctions analysis, however, Whiting agreed that legislative immunity barred the suit at least in part. R. 31, Mem. Op., PageID 389 n.12 (No. 24-5919); R. 19, Resp. in Opp. MTD, PageID 119 (No. 24-5919). That just reinforces the frivolousness of this lawsuit and suggests that Whiting's only motive in filing suit was to waste everyone's resources.

***Other Considerations.*** Beyond Whiting's filing of frivolous claims, there are broader reasons for affirming the district court's sanctions orders against his attorney.

To start, consider that nearly all of Whiting's claims were barred by legislative immunity, legislative privilege, or litigation privilege. We have said that when a defendant is plainly protected by an absolute immunity, suits against that defendant are frivolous as a matter of law, *see King*, 71 F.4th at 528, and that is the case here.

Additionally, Whiting's lawsuits are not an isolated, legitimate attempt to redress his grievances with the City of Athens. Rather, they are just a subset of frivolous and harassing litigation Whiting and his counsel have brought multiple times over against the City, which justifies sanctions like this. *See Trump I*, 653 F. Supp. 3d at 1219–26; *Trump II*, 161 F.4th at 690. In 2020, he sued the City for condemning a building he did not own or have any legal affiliation with. *See Trew*, 2023 WL 5352133, at *1 & n.1. Upset with the City's decision, he now appears to be using the courts for revenge by suing the City and its employees fourteen times in five years. City's Br. in No. 24-5919 at 16. This is precisely the type of conduct that § 1927 seeks to deter.

Sanctions are particularly warranted here because Whiting's lawsuits harm not just the parties to his lawsuits, or even the courts, but the public writ large. When the government is the defendant, it must spend "thousands of taxpayer dollars" that would be "better spent on students, teachers, [] schools," and public services. *Williams v. Shelby Cnty. Sch. Sys.*, 815 F. App'x 842, 847 (6th Cir. 2020) (McKeague, J., dissenting). When those taxpayer dollars are diverted, innocent people are unable to receive the benefits and public services their tax dollars fund. Sanctions like this are an equitable way "to shield these innocent stakeholders from the expense of" Whiting's incessant frivolous litigation. *Id.* The district court did not abuse its discretion in taking this measure.

***Whiting's Remaining Counterarguments.*** Besides contesting the merits, Whiting argues that the fees award under § 1927 was erroneous because (1) he was pro se when the sanctions were issued, (2) there was no evidence that he acted in bad faith or with reckless disregard, and (3) there was no show cause order. We reject all three arguments.

The first one fails because the district court sanctioned only Irion under § 1927, not Whiting. *See* R. 279, Order, PageID 2796–97 (25-5424) ("Van Irion[] is liable for all fees awarded pursuant to § 1927," so "Van Irion[] is hereby **ORDERED** to pay all attorney fees awarded pursuant to 28 U.S.C. § 1927.") Moreover, as explained below, 42 U.S.C. § 1988 amply supports the sanctions order, so the error would be harmless in any event. *See CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 584 (6th Cir. 2015). The second argument fails because bad faith is not required for sanctions under § 1927. *Bojicic*, 145 F.4th at 673. And the third one fails because appellees explicitly moved for sanctions under § 1927 in the district court. R. 234, Mem. ISO Mot. for Attorneys' Fees, PageID 2499 (25-5424).

**2.**

Now we turn to the attorneys' fees awarded under 42 U.S.C. § 1988. "In any action or proceeding to enforce" constitutional rights under § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Section 1988 "authorizes a district court to award attorney's fees to a defendant 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without

foundation.'" *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)).    The statute "serves to relieve a defendant of expenses attributable to frivolous charges.   The plaintiff acted wrongly in leveling such allegations, and the court may shift to him the reasonable costs that those claims imposed on his adversary." *Id.* at 834.

The fee award under § 1988 is unassailable.   Appellees are the prevailing party because they "successfully defend[ed] against" all of Whiting's claims. *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025) (quoting *Prevailing Party*, Black's Law Dictionary (rev. 4th ed. 1968)).   And Whiting's claims were frivolous.   Indeed, we have upheld a fees award under § 1988 in a very similar case. *See Bowman v. City of Olmsted Falls*, 802 F. App'x 971, 975 (6th Cir. 2020) (affirming an award of attorneys' fees under § 1988 because the plaintiff knew the claims were barred at least in part).

We reject Whiting's assertion that appellees failed to segregate the fees spent on the state-law claims from the federal claims. *See* Appellant's Br. in No. 24-5918 at 26–27; Appellant's Br. in No. 24-5919 at 14–15; Appellant's Br. in 25-5424 at 17–20.   In each case, the district court recognized that the defendants were not entitled to fees under § 1988 for time spent defending against the state-law claims. *See* R. 57, Order, PageID 672 n.4 (No. 24-5918); R.44, Order, PageID 535 n.5 (No. 24-5919); R. 279, Order, PageID 2793–96 (No. 25-5424); *see also Fox*, 563 U.S. at 829.   In No. 25-5424, the district court reduced each defendant's fee award by 60% to "account[] for the overlap between the work applicable to both the federal and state-law claims[.]"   R. 279, Order, PageID 296 (No. 25-5424).   And in Nos. 24-5918 and 24-5919, the district court credited the defendants' statement that "the fees sought [for the 42 U.S.C. § 1983 claims] would have been necessary regardless of whether the state law claims were included."   R. 57, Order, PageID 672 n.4 (No. 24-5918) (alteration in original); R.44, Order, PageID 535 n.5 (No. 24-5919).   We therefore affirm the district court's fees award under § 1988.

**3.**

Finally, we address the attorneys' fees awarded under Tennessee law.   "[I]f a claim is filed with a Tennessee or federal court . . . against an employee of the state or of a governmental entity of the state in the person's individual capacity, and the claim arises from actions or omissions of

the employee acting in an official capacity or under color of law, and that employee prevails in the proceeding as provided in this section, then the court or other judicial body on motion shall award reasonable attorneys' fees and costs incurred by the employee in defending the claim filed against the employee." T.C.A. § 29-20-113(a).  The defendant may obtain fees if he "successfully defends the claim alleging individual liability." *Id.* § 29-20-113(b)(1).  "[T]he legislature did not limit what constitutes a successful defense in any manner, and it appears that the legislature therefore intended the statute to apply broadly." *Aylor v. Carr*, M2018-01836-COA-R3-CV, 2019 WL 2745625, at \*4 (Tenn. Ct. App. July 1, 2019).

Appellees satisfy § 29-20-113.[5]  Whiting sued Mike Keith and Steve Sherlin in their individual capacities.  R. 1, Complaint, PageID 1 (No. 24-5919); R. 1, Complaint, PageID 1–2 (No. 24-5918).  Those appellees prevailed because they received a final order terminating the case on the merits in their favor.  *See Aylor*, 2019 WL 2745625, at \*4; *see also Lackey*, 604 U.S. at 199–200.  That is all the statute requires.[6]  We therefore affirm the fees award under state law, also.

## IV.

We **AFFIRM** the district court's judgment in all respects.

---

[5]The constitutionality of T.C.A. § 29-20-113 is not before us, and nothing in this opinion should be read as us deciding whether T.C.A. § 29-20-113 is preempted on its face or as applied.

[6]Whiting asserts that the district court cannot award fees for claims brought under state law, Appellant's Br. in No. 24-5919, at 14–15, but he cites no authority for this argument, so it is waived. *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 618 n.9 (6th Cir. 2014).